# Myers Bros. v. Jones.

(Decided Dec. 18, 1934.)

(As Modified on Denial of Rehearing March 22, 1935.)

J. B. WALL for appellants.

H. C. CLAY for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The judgment appealed is on contracts for work done at a stipulated hourly wage and for certain road construction upon a unit basis.

The appellants, Karl Myers and Ralph Myers, as partners doing business as Myers Bros., had a contract with the state highway commission which included the construction of the approaches and substructure of a bridge over Rockcastle river between Laurel and Rockcastle counties. The basis of this suit by the appellee is that they had subcontracted part of the work to Tony Jones, but before he completed it Myers Bros. canceled the subcontract and proceeded to finish the job themselves, and in that connection employed the plaintiff, now appellee, J. Steve Jones, as a laborer, at the rate of 30 cents an hour and, later made a contract with him to do certain riprap work on a fill at $2 a square yard. The claim for labor amounted to $261.30, and the balance on account of the other work to $672.93. The essential defense was and is that Myers Bros. did not cancel the subcontract or release the subcontractor but did the work for him and in his behalf because he

was unable to finance it. The defendants claimed that Steve Jones was working for Tony Jones or for himself or Tony as partner. They also claimed that Steve was a silent partner of Tony in the subcontract, and that their undertaking to complete the riprap work was under an agreement that Jones was not to receive any wage, but they were to divide between themselves whatever might be the difference between the contract price of $2 a square yard and the cost of doing the work, or bear whatever loss there might be. The verdict was for the full amount asked by the plaintiff. The principal ground for reversal of the judgment is the insufficiency of the evidence.

Steve Jones testified that in the latter part of March, 1933, Karl Myers told him he had taken the contract away from Tony because he had failed to make bond and that they would have to complete his job. He wanted Steve to continue working, and agreed to pay him 30 cents an hour. He worked for Myers Bros. under this employment from April 1st to July 1st. He had previously worked for his brother Tony as foreman, but had not been paid in full by him. Myers Bros. paid the men after April 1st, but Steve made no request for his wages, for, as he testified, he did not need the money, and Myers Bros. claimed they did not have any money and would not have until they collected from the highway commission. Steve seems to have known that he was not put on the pay roll and that his was the only name omitted. According to Steve in July, when the concrete work was finished, Myers asked him if he could do the riprap work, and agreed to pay him $2 a square yard, less 10 per cent. for doing it. He finished that job in ten days, and the sum of $672.93 represented his compensation or the net profit under this agreement. He had hired his helpers, but Myers Bros. paid them with the understanding that the wages were to be deducted from his contract price. Steve and Tony were partners in the operation of a grocery, restaurant, and boarding house. Steve evaded questions as to whether he was a silent partner with Tony in the road construction contract. But Tony testified that they were not partners in that venture, and that after April 1st he had no connection with the job. Although he testified that the riprap work was not embraced in his contract with Myers Bros., that instrument shows

that it was. Steve denied that he ever saw that contract, but there was substantial evidence that he knew all about it.

Karl Myers testified that Steve told him he was a partner with Tony, and he related several circumstances which indicated that he was, although his name was not mentioned in the subcontract. He did not take that contract away from Jones. Following a conversation with Tony in the presence of Steve, a letter was prepared by a lawyer for the three of them surrendering the subcontract. That letter addressed to Myers Bros. bearing date of April 14, 1933, stated that Tony Jones had not been able to make the bond provided in his contract, but would like to retain it, and was willing for Myers Bros. to take over the work and manage it through their own foreman as though it were their job, using his (Jones') equipment without rent or charge and with the understanding that Jones would be paid the net profit after deducting the cost of material and labor, rent of Myers Bros.' equipment, and their percentage of the cost. A copy of this letter was delivered to Steve. This offer was accepted in writing, with the provision that Myers Bros. would make no charge for the use of their equipment, in the event there should be no profit made by Jones. Thereupon Myers Bros. took over the job under this agreement. Tony bought the material and Myers Bros. paid for it, as well as the wages of the workmen. Tony had other brothers on the pay roll, but Steve was not put on because he stated that he was a partner and declined to accept wages. Steve never made any claim to compensation until shortly before the suit was filed. It was established that he was never on the pay roll of Myers Bros. The pay rolls sent in for the job were in the name of "Jones Brothers," and payments were made on accounts rendered to "Jones Brothers." Checks of that firm were also given to laborers before April 1st, but the plaintiff explained that they were given as change for checks of Myers Bros. spent at their store. The profit made on this riprap work was not paid to Tony Jones, but was used as a credit on the amount owed by him on account of the contract before April 1st. Evans, the superintendent on the job of Myers Bros., testified that after April 1st Tony was not about very much, and that Steve looked after the job and hired and fired the men as he chose.

In rebuttal, the plaintiff denied hearing the conversation between Tony and Myers and having any knowledge of the letter of April 14th, until some time in July, when it was shown to him by Myers with the statement that he ought to know what was going on. He also denied having hired or fired anybody after April 1st. Tony testified that Myers told him that he was having to take the contract away from him. He denied any participation in the preparation of the letter and stated that he signed it hurriedly and without reading it while out at work upon the statement of Myers that the highway commission was forcing him to take over the job and he had to have the paper showing that he had done so.

The foregoing is the substance of the evidence, although there were a number of witnesses who testified in corroboration or denial of different circumstances and transactions tending to support the respective claims of the parties. No criticism is offered of the instructions under which the case was submitted on the several issues indicated. On appeal, the proof where contradictory is not to be considered in the way that a jury considers it, but on the sole question of whether the verdict is palpably against the evidence, for we cannot usurp the power of decision on the merits which is vested in the jury. Viewed in that light, we must regard the evidence sufficient to sustain the verdict and judgment.

A new trial was asked upon the ground of newly discovered evidence, and its denial is also submitted as requiring a reversal of the judgment. The substance of this ground is that the defendants live in Indiana and came to London for the trial on the day before it was set. Because of their absence from the community, they had had no opportunity to learn what could be proved to establish the partnership between Steve and Tony Jones. After the trial, when it became known that the plaintiff had secured a judgment, the defendants heard of other witnesses by whom they could establish the partnership as a fact. The affidavits of these several parties are filed in support of the motion for a new trial. While this additional evidence may be quite persuasive, under a long line of decisions it must be held that the evidence was cumulative, and this court should not disturb the discretionary action of the trial

330

judge in refusing to grant a new trial on this account, unless it is of such probative force as to change the result in all probability

Wherefore the judgment is affirmed.